**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
Edward Coombs, Janiqua Mayo, Martin Sierra, Dreshon Weaver-Moore, William Pertha, Wayne Reed, Erhauyi Omoregie, and Djuan Collins,

                                          *Plaintiffs*,

             - against -

Same Day Delivery Inc., Scott Weinstein, and Bene Ewerton

                                       *Defendants*.
------------------------------------------------------------X

Case No.: 1:22-cv-00520-MKV

Hon. Mary Kay Vyskocil,
U.S.D.J.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO VACATE THE SEPTEMBER 2, 2022 ARBITRAL AWARD**

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiffs*

Dated: New York, New York
       November 30, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 2

    A.  The Filing of the Collective Action Complaint ................................................... 2

          i.  Plaintiffs' Overtime Claims .................................................... 3

          ii.  Plaintiffs' Tip Theft Claims .................................................... 4

RELEVANT PROCEDURAL BACKGROUND ........................................................................ 5

    A.  The Filing of the Summons and Complaint ........................................................ 5

    B.  The Service of the Summons and Complaint ...................................................... 5

    C.  The Parties Agree to Proceed to Arbitration ...................................................... 6

    D.  The Filing of the Arbitration ............................................................................... 6

    E.  Defendants' Contemplated Motion to Dismiss ................................................... 6

    F.  The June 15, 2022 Second Pre-Hearing Order, and the Briefing on the
       Motion to Dismiss .............................................................................................. 7

    G.  The September 2nd Award ................................................................................... 8

LEGAL STANDARD ................................................................................................................. 8

  I.  Legal Standard for Vacatur Under the "Effective Vindication" Doctrine ......................... 8

  II.  Legal Standard for Vacatur Under the FAA ...................................................................... 8

    A.  Legal Standard for Court's Authority to Review an Arbitration Award Under the
       FAA ..................................................................................................................... 8

    B.  Legal Standard for Vacatur Under 9 U.S.C. § 10(a) ................................................. 9

  III.  Legal Standard for Vacatur for "Manifest Disregard" of the Law ................................... 10

  IV.  Legal Standard for Vacatur of Arbitral Decisions Against Public Policy ........................ 10

ARGUMENT .............................................................................................................................. 11

I.    This Court has Authority to Review the September 2nd Award........................................ 11

II.   The September 2nd Award Prevents Plaintiffs from Vindicating Their Statutory Rights. 11

      A.   The September 2nd Award Misapplied the Law ....................................................... 12

      B.   Intent to Shorten the Statute of Limitations was not Clear and Unequivocal .......... 14

      C.   The Arbitration Agreement Violates the Anti-Kickback Statute ............................. 16

III.  Arbitrator Brown Selectively Ignored Critical Facts, in Manifest Disregard of the Law. 19
      A.   The April 13, 2022 Stipulation did not Bind Plaintiffs to the Terms of the
           Arbitration Agreement.............................................................................................. 20

      B.   At Minimum, Plaintiff Collins is Not Bound by this Decision, Because he was not a
           Signatory to the April 13, 2022 Stipulation.............................................................. 21

      C.   Even if Plaintiffs *Had* Entered into Arbitration Agreements via Stipulation, Their
           Claims Were Filed Within the Offending Statute of Limitations Period ................. 21

      **CONCLUSION** ..................................................................................................... **21**

## **TABLE OF AUTHORITIES**

### **Cases**

*159 MP Corp. v. Redbridge Bedford, LLC.*,
    33 N.Y.3d 353 (2019) ........................................................................................ 16

*Adult Use Holdings Inc. v. FaZe Clan Inc.*
    2022 WL 4538338 (S.D.N.Y. 2022).............................................................. 9, 11

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).............................................................................................. 8

*Ape Grp. SPA v. Republic of Argentina*,
    2022 WL 463309 (S.D.N.Y. 2022)...................................................................... 14

*Balderas v. 8 Chelsea Corp.*,
    2019 WL 3429500 (S.D.N.Y. 2019) ..................................................................... 8

*Batales v. Friedman*,
    144 A.D.3d 849 (2d Dept. 2016) ............................................................. 14, 15, 16

*Certified Fence Corp. v. Felix Industries*,
    260 A.D.2d 338 (2d Dept. 1999) ....................................................................... 15

*Chu Chung v New Silver Palace Rest., Inc.*,
    272 F.Supp.2d 314 (S.D.N.Y. 2003)................................................................... 17

*Fitzpatrick Weller, Inc. v. Miller*,
    309 A.D.2d 1273 (4th Dept. 2003) .............................................................. 14, 16

*Hamerslough v. Hipple*,
    2012 WL 5290318 (S.D.N.Y. 2012)................................................................... 10

*Keller v. About, Inc.*
    2021 U.S. Dist. LEXIS 86235 (S.D.N.Y. 2021).................................................. 13

*Kerr McGee Ref. Corp. v. M/T Triumph*,
    924 F.2d 467 (2d Cir. 1991).......................................................................... 9, 11

*Koerner v. State of New York*,
    62 N.Y.2d 442 (1984) ........................................................................................ 13

*Konkur v. Ucad. of Sci. Charter Sch.*,
    38 N.Y.3d 38 (2022) ................................................................... 17

*Lavin v. Briefly Stated, Inc.*,
    2011 WL 1334845 (S.D.N.Y. 2011) ........................................... 14

*Maack v. Wyckoff Heights Med. Ctr.*,
    2016 WL 3509338 (S.D.N.Y. 2016) ........................................ 9, 11

*Matter of Brown & Guenther (North Queensview Homes)*,
    18 A.D.2d 327 (1st Dept. 1963) .................................................. 19

*Mercado v. Schwartz*,
    2022 N.Y. Slip Op. 4962 (2d Dept. 2022) .................................. 16

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)......................................................... 8

*Smile Train, Inc. v. Ferris Consulting Corp.*,
    177 A.D.3d 629 (1st Dept. 2014) ...................................... 14, 15, 16

*Spataro v. Hirschhorn*,
    40 A.D.3d 1070 (2d Dept. 2007) ................................................ 15

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)....................................................... 10

*Toure v. Thunder Lube Inc.*,
    2019 WL 4805197 (E.D.N.Y. 2019) ............................................ 8

*United Paperworkers Int'l Union AFL–CIO v. Misco*, Inc.,
    484 U.S. 29 (1987)............................................................... 10, 11

*Wells Fargo Advisors, LLC v. Sappington*,
    328 F. Supp. 3d 317 (S.D.N.Y. 2018).......................................... 9

*Zagelbaum v. Unitedhealthcare of N.Y., Inc.*,
    2020 N.Y. Slip Op. 30527 (N.Y. Sup. Ct 2020) .......................... 15

## <u>Statutes</u>

9 U.S.C. § 10(a) (2012)........................................................................ 9

CPLR § 214(2) ................................................................................... 13

New York State Executive Law § 290 ........................................................................................ 13

NYLL § 198(3) ............................................................................................................... 14, 18

NYLL § 198-b(1)(2) ............................................................................................................. 18

NYLL§ 198-b ................................................................................................................. 2, 14

NYLL§ 198-b(2) ................................................................................................................. 19

UCC § 2-75(1) ................................................................................................................. 14

Plaintiffs Edward Coombs ("Coombs"), Janiqua Mayo ("Mayo"), Martin Sierra ("Sierra") Dreshon Weaver-Moore ("Weaver-Moore", William Pertha ("Pertha"), Wayne Reed ("Reed"), Erhauyi Omoregie ("Omoregie") and Djuan Collins ("Collins", and collectively, the "Plaintiffs"), by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the Declaration of Jason Mizrahi, Esq., and the exhibits annexed thereto (the "Mizrahi Decl.") in support of Plaintiffs' motion to vacate, or in the alternative to modify, the arbitral award entered on September 2, 2022 (the "September 2nd Award"), by Arbitrator James A. Brown ("Arbitrator Brown") of ADR Systems of America, LLC ("ADR Systems"), pursuant to, *inter alia*, the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA") (the "Motion to Vacate"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Defendants Same Day Delivery Inc., Scott Weinstein, and Bene Ewerton (collectively, the "Respondents", or "Same Day") are seeking to enforce eight (8) purported arbitration agreements, that Plaintiffs never executed. The arbitration agreements, selectively interpreted[1] by Defendants, abridge the limitations period for Plaintiffs' Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York State Labor Law ("NYLL") claims from six (6) years to *six (6) months*. The offending language of the arbitration agreement is unenforceable because, *inter alia,* it does not provide an accessible forum for Plaintiffs to assert their FLSA or NYLL claims.

As set forth more fully below, the offending language in the arbitration agreements must be stricken under the "effective vindication" doctrine. Moreover, the September 2nd Award must be vacated, or in the alternative, modified, for three (3) independent reasons. First, the September 2nd Award was issued in violation of Section 10(a) of the FAA. Second, the September 2nd Award

---

[1] As written, the offending statute of limitations provision seeks to abrogate **all of Plaintiff's claims against Defendants to six (6) months**. Presumably aware that the offending SOL provision is unenforceable, as written, Defendants are selectively enforcing this provision against Plaintiffs' NYLL claims.

is in "manifest disregard" of the applicable law. Lastly, the September 2nd Award is contrary to public policy, and explicitly conflicts with, *inter alia*, the anti-kickback provision of Article 6 of the NYLL.  NYLL§ 198-b.

In an archetypically corporate immoral fashion, Same Day does not deny misappropriating Plaintiffs' wages, but rather principally argues that technical infirmities haven their corporate graft. Same Day cannot take refuge in the law for its amoral business practices, however. For the reasons set forth more fully below, Plaintiffs' Motion to Vacate should be granted in its entirety.

## **RELEVANT FACTUAL BACKGROUND**

### A. **The Filing of the Collective Action Complaint**

Defendants own and operate Same Day Delivery, a courier service company. [Mizrahi Decl. at ¶ 5] [Ex. C at ¶ 1]. Defendants tout having "decades in the delivery business in the Northeast, employ more than 900 hard working [*sic*] people and use a variety of equipment, including more than 500 company owned vans, plus rickshaws, and hand carts to provide quality, reliable 'last-mile' delivery of goods." [*Id.* at ¶ 2]. Defendants pride themselves as being "one of the first delivery companies helping folks economically deliver orders placed online." [*Id.* at ¶ 3]. Defendants lure potential drivers in with the promise of paying "competitive wages," including "substantial tips from customers." [*Id.* at ¶ 4]. Although Same Day promotes a holistic image as a good corporate citizen [*id.* at ¶¶ 2-4], the truth is that it has no qualms about misappropriating and pilfering wages from vulnerable, low-income, minority employees. To accomplish their business goals[2], Defendants fail to pay their delivery drivers and supervisors, legally required wages under the FLSA and NYLL, including overtime, and misappropriate their drivers' tipped wages.  [*Id.* at ¶ 5].

---

[2] Defendants' abusive practices have surfaced in three (3) previous lawsuits alleging similar claims of unpaid wages under the FLSA and NYLL. *See Amaro v. Same Day Delivery Inc. et al*, 15-cv-01572 (KAM) (RML) (E.D.N.Y. 2015); *Greene et al v. Subcontracting Concepts, L.L.C. et al*, 13-cv-01500 (AJN) (S.D.N.Y. 2013); *Scott et al v. Same Day Delivery, Inc. et al*, 07-cv-03586 (AKH) (S.D.N.Y. 2007).

Plaintiffs are eight (8) former employees of Same Day, all of whom have been grossly exploited. Plaintiffs' allege significant wage and hour violations under the FLSA and Articles 6 and 19 NYLL, for, *inter alia*, unpaid overtime wages, spread-of-hours, violations of the notice and record keeping requirements of the WTPA, and unlawful deductions.

The gravamen of the Complaint alleges that Plaintiffs, who worked as delivery drivers[3] at the height of the COVID-19 pandemic[4], were never paid overtime, despite regularly working in excess of forty (40) hours per week. Moreover, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tipped wages.

### i.     Plaintiffs' Overtime Claims

Defendants' historic policy and practice was to pay Plaintiffs a fixed hourly rate of pay, regardless of the number of hours that they actually worked. [*Id*. at ¶ 88]. The following five (5) Plaintiffs worked for Defendants in excess of forty (40) hours a week but never received an overtime premium of one and one-half times their regular rate of pay for those hours:

| Plaintiff | Start Date | End Date | Avg. Hours Worked per Week | Fixed Rate of Pay |
|---|---|---|---|---|
| | 4/1/2019 | 12/31/2019 | 44 | $15.00 |
| Edward Coombs | 1/1/2020 | 2/29/2020 | 44 | $15.00 |
| | | | | |
| Janiqua Mayo | 7/1/2019 | 10/31/2019 | 84 | $17.00 |
| | 11/1/2019 | 12/31/2019 | 72 | $17.00 |
| | 1/1/2020 | 11/4/2020 | 72 | $17.00 |
| | | | | |
| Wayne Reed | 9/1/2019 | 12/31/2019 | 44 | $15.00 |
| | 1/1/2020 | 11/6/2020 | 44 | $15.00 |
| | | | | |
| Erhauyi Omoregie | 3/1/2020 | 11/6/2020 | 48 | $15.00 |
| | | | | |
| Djuan Collins | 2/1/2020 | 8/31/2020 | 44 | $15.00 |

---

[3] Each Plaintiff worked at Same Day as a delivery driver. [Mizrahi Decl. at ¶ 5] [Ex. C at ¶¶ 5-6]. Plaintiff Mayo also worked at Same Day as a supervisor. [*Id.* at ¶ 17].

[4] *I.e.,* when online grocery shopping reached an all-time high. [Mizrahi Decl. at ¶ 6] [Ex. D at § II(B)(i)(c)].

ii.      **Plaintiffs' Tip Theft Claims**

In addition to Defendants' unlawful overtime policies, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tipped wages.

During the relevant period, Defendants were performing courier services for "Fresh Direct," an online retailer that sells groceries. [*Id.* at ¶¶ 112]. Fresh Direct customers who wish to tip delivery personnel, specify the tip amount on the applicable FreshDirect Platform at checkout. [*Id.* at ¶ 113]. Tips appear itemized on the customers' order confirmation and are included in the customers' credit card total. [*Id.* at ¶ 114]. According to Fresh Direct's Customer Agreement, "the full amount of the tip, less the processing fee charged by the credit card processer will ***be paid to the delivery personnel who…, participated in the actual delivery of [the] order***." [*Id.* at ¶ 115].

During the relevant period, Defendants maintained invoices, which contained, *inter alia,* an itemized breakdown of each customers' tips. [*Id.* at ¶ 116]. As a delivery driver and supervisor, Plaintiff Mayo frequently saw these invoices. [*Id.* at ¶ 117].

Approximately two (2) to three (3) months after Plaintiff Mayo started working, (*i.e.,* in or around September 2019), Defendants started withholding these invoices from their drivers, including Plaintiffs. [*Id.* at ¶ 118]. Defendants started withholding tip information from Plaintiffs, after their drivers, including Plaintiffs, started complaining about their tips.  [*Id.* at ¶ 119]. In response to Plaintiffs' tip theft complaints, Defendants would feign ignorance, and make excuses. [*Id.* at ¶ 120]. For example, Plaintiffs were told by their supervisors that Defendants would simply "look into it." [*Id.* at ¶ 121].

On multiple occasions, Plaintiffs would have conversations with Fresh Direct customers when performing deliveries regarding gratuities and tips. [*Id.* at ¶ 122]. On these occasions, Plaintiffs were told by Fresh Direct customers that they were tipping online. [*Id.* at ¶ 123]. This came as a surprise to Plaintiffs, who noticed that their tipped wages would significantly fluctuate

each week. [*Id.* at ¶ 124]. Some weeks, Plaintiffs would receive some tips from Defendants, while in other weeks, Plaintiffs received none. [*Id.* at ¶ 125].

Although the exact amount is unknown, it is estimated that Defendants unlawfully appropriated between $100 to $700 in tipped wages, per employee, per week. [*Id.* at ¶ 126].

## **RELEVANT PROCEDURAL BACKGROUND**

### **A. The Filing of the Summons and Complaint**

The instant action was filed on January 20, 2022. [Dckt. No. 1]. The initial Complaint asserts six (6) Causes of Action against Defendants.

FIRST:          Unpaid overtime wages under the FLSA;

SECOND:     Unpaid overtime wages under the NYLL;

THIRD:         Unpaid spread-of-hours premiums under the NYLL;

FOURTH:     Failure to provide wage notices under the NYLL and WTPA;

FIFTH:          Failure to provide wage statements under the NYLL and WTPA; and

SIXTH:          Unlawful deductions under the NYLL.

[Dckt. No. 1 at ¶¶ 102-130].

### **B. The Service of the Summons and Complaint**

On January 20, 2022, Plaintiffs filed a Request for Issuance of Summons as to Defendants. [Dckt. No. 8]. An electronic summons was subsequently issued on January 21, 2022. [Dckt. No. 9]. On January 24, 2022, Defendants appeared in the action through counsel, Matthew Alexander Brown. On February 1, 2022, Defendants were served a Summons and Complaint, with a Civil Cover Sheet. [*See* Dckt. No. 14]. Pursuant to Fed.R.Civ.P. 12, an answer or other response to the Complaint was due on or before February 22, 2022. [*Id.*].  On February 3, 2022, proof of service was filed with the Court. [*Id.*].  Thus, Defendants had both actual and constructive knowledge of the instant action since its inception.

**C.  The Parties Agree to Proceed to Arbitration**

On February 18, 2022, the parties filed a joint letter informing the Court of their intention to resolve the underlying wage-and-hour action in arbitration. [Dckt. No. 17]. Of critical importance, Plaintiffs Coombs, Sierra, Weaver-Moore, Pertha, Reed, Omoregie or Collins never signed an arbitration agreement, *i.e.,* they never agreed to shorten the statute of limitations period. [Mizrahi Decl. at ¶ 6] [Ex. D at p. 3 n.6].

On April 6, 2022, the Court directed the parties to file a joint letter addressing the disposition of the instant action, pending the pending the outcome of the arbitration. [Dckt. No. 19]. On April 12, 2022, the parties submitted a proposed stipulation and order, agreeing to refer the action to a final and binding arbitration before ADR Systems. [Dckt. No. 20]. The Court entered the parties' stipulation and order on April 13, 2022. [Dckt. No. 21].

**D.  The Filing of the Arbitration**

Plaintiffs filed a commercial demand for arbitration with ADR Systems on March 3, 2022. On April 5, 2022, ADR Systems appointed Arbitrator Brown to oversee the parties' arbitration, pursuant to the governing ADR Systems Commercial Arbitration Rules (the "ADR Systems Rules").

**E.  Defendants' Contemplated Motion to Dismiss**

On May 8, 2022, Defendants filed a five (5) page, pre-motion conference letter, requesting leave to file a motion to dismiss Plaintiff's NYLL claims on the basis that Plaintiffs' had entered into valid and enforceable waivers, abridging the limitations period for Plaintiff's wage claims from six (6) years to ***six (6) months***. In the alternative, Defendants' argued that Plaintiffs had failed to state a claim for unlawful deductions and spread-of-hours.

On May 23, 2022, Plaintiffs filed a letter in response, noting that the governing ADR Systems Rules discourage dispositive motion practice.[5] [*See* ADR Rule 7.3(e)]. This is in line with ADR's stated purpose of offering parties with a "fast, efficient, relatively inexpensive and final" proceeding, that is not available in formal litigation. [*Id.* at Introduction].

Plaintiffs' May 23, 2022 letter response also noted that assuming *arguendo* that the governing ADR Systems Rules weighed in favor of filing of a pre-answer motion to dismiss (which they do not), Defendants' contemplated partial motion to dismiss was doomed to fail given that it sought to overturn a legion of Second Circuit case law, requiring the completion of discovery before issues of disputed fact can be decided.

### F. The June 15, 2022 Second Pre-Hearing Order, and the Briefing on the Motion to Dismiss

On June 15, 2022, Arbitrator Brown entered that certain Second Pre-Hearing Order[6], granting Defendants leave to file a partial motion to dismiss Plaintiffs' NYLL claims. The Second Pre-Hearing Order also granted Plaintiffs leave to file the First Amended Statement of Claim (the "ASOC").[7] Of critical importance, plaintiff Djuan Collins appeared in the Arbitration, for the first time, through the First Amended Statement of Claim.

Defendants' filed their Motion to Dismiss on July 1, 2022. On July 15, 2022, Plaintiffs filed their opposition to Defendants' Motion to Dismiss.[8]

---

[5] A true and correct copy of Plaintiff's May 23, 2022 letter response is annexed to the Mizrahi Decl. as Exhibit "A".
[6] A true and correct copy of the June 15, 2022 Second Pre-Hearing Order is annexed to the Mizrahi Decl. as Exhibit "B".
[7] A true and correct copy of Plaintiffs' First Amended Statement of Claim is annexed to the Mizrahi Decl. as Exhibit "C".
[8] A true and correct copy of Plaintiffs' July 15, 2022 opposition to Defendants' Motion to Dismiss is annexed to the Mizrahi Decl. as Exhibit "D".

### G. The September 2nd Award

On September 2, 2022, Arbitrator Brown issued an opinion and order[9] granting Defendants' Motion to Dismiss, *inter alia,* Plaintiffs' NYLL claims as time-barred.[10]

In so finding that Plaintiffs entered into a valid and enforceable waiver, abridging the limitations period for wage claims from six (6) years to ***six (6) months***, Arbitrator Brown relied primarily on two decisions from the District Court of the Southern District of New York: *Keller v. About, Inc*. 2021 U.S. Dist. LEXIS 86235 (S.D.N.Y. 2021) and *Cayetano v. Fed. Express Corp.*, 19-cv-10619-AT at Dckt. No. 21 (S.D.N.Y. 2022).

## LEGAL STANDARD

### I.     Legal Standard for Vacatur Under the "Effective Vindication" Doctrine

Federal courts will decline to enforce "[arbitration] agreements that prevent the 'effective vindication' of a statutory right." *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 235 (2013); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) ("[A] federal court will compel arbitration of a statutory claim only if it is clear that the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." (quotation omitted). Federal Courts in this Circuit have applied the "effective vindication" doctrine in the context of NYLL, as well as FLSA claims. *See Toure v. Thunder Lube Inc*., 2019 WL 4805197, at *5 (E.D.N.Y. 2019); *Balderas v. 8 Chelsea Corp.*, 2019 WL 3429500, at *3 (S.D.N.Y. 2019).

### II.    Legal Standard for Vacatur Under the FAA

#### A.  Legal Standard for Court's Authority to Review an Arbitration Award Under the FAA

The Second Circuit has clearly established that under the FAA, a district court has the power to vacate a final arbitration award. *Adult Use Holdings Inc. v. FaZe Clan Inc.*, 2022 WL

---

[9] The award was transmitted to the parties' via email on September 2, 2022, but was dated August 29, 2022.
[10] A true and correct copy of the September 2nd Award is annexed to the Mizrahi Decl. as Exhibit "E".

4538338, at *5–6 (S.D.N.Y. 2022) (citing *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)). "An award that finally and conclusively disposes of a separate independent claim may be [vacated] even if it does not dispose of all the claims that were submitted to arbitration." *Kerr McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (internal quotations and citations omitted). The FAA provides that notice of a motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." *Maack v. Wyckoff Heights Med. Ctr.*, 2016 WL 3509338, at *7 (S.D.N.Y. 2016) (citing 9 U.S.C. § 12); *see also* New York Civil Law and Procedure ("CPLR") § 7511(a), ("[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him").

### B.  Legal Standard for Vacatur Under 9 U.S.C. § 10(a)

Section 10(a) of the FAA provides four (4) grounds upon which a federal court may vacate an arbitral award:

> "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party were prejudiced; and (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a)(1)–(4) (2012).

 "An arbitrator exceeds his authority only by (1) considering issues beyond those the parties have submitted for his consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Wells Fargo Advisors, LLC v. Sappington*, 328 F. Supp. 3d 317, 322 (S.D.N.Y. 2018) (citing *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49 (2d Cir. 2015). An arbitral award "must" be vacated under 9 U.S.C. § 10(a)(4) where "an arbitrator

"…effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310 (S.D.N.Y. 2013) (internal citations and quotations omitted).

### III.     Legal Standard for Vacatur for "Manifest Disregard" of the Law

In addition to the express statutory grounds found in § 10(a) of the FAA, there is an implied basis for vacatur where an arbitrator's award is in "manifest disregard" of the applicable law. *Hamerslough v. Hipple*, 2012 WL 5290318, at *4 (S.D.N.Y. 2012). To determine whether "manifest disregard" is apparent, the Second Circuit engages in a two-pronged analysis. *Id*. First, the reviewing court must find that the arbitrator ignored clearly defined law that was "in fact explicitly applicable to the matter before" him. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010) (internal citation omitted). Second, the court must find that the applicable law was in fact ignored or improperly applied, leading to an erroneous outcome. *Hamerslough*, 2012 WL 5290318 at *4.

### IV.     Legal Standard for Vacatur of Arbitral Decisions Against Public Policy

A party may seek to vacate an arbitral award because it is contrary to public policy. *Hamerslough*, 2012 WL 5290318 at *4 (citation omitted). The party moving to vacate must establish the existence of a valid public policy consideration. *Id.* (citing *Local 97, Int'l Bd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir.1999)). A reviewing court's authority to vacate on public policy grounds is restricted to "situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l Union AFL–CIO v. Misco*, *Inc.*, 484 U.S. 29, 38 (1987) (internal citation omitted). "[T]he court must determine whether the award itself, as contrasted with the reasoning that underlies the award, create[s] [an] explicit

conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *Id.* (internal citation and quotation omitted).

## ARGUMENT

### I.     This Court has Authority to Review the September 2nd Award

As a preliminary matter, this Court has authority to review the September 2nd Award under the FAA.

The Second Circuit has clearly established that under the FAA, a district court has the power to vacate a final arbitration award. *Adult Use Holdings Inc* at *5–6 (citing *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)). "An award that finally and conclusively disposes of a separate independent claim may be [vacated] even if it does not dispose of all the claims that were submitted to arbitration." *Kerr McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (internal quotations and citations omitted). The FAA provides that notice of a motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." *Maack v. Wyckoff Heights Med. Ctr.*, 2016 WL 3509338, at *7 (S.D.N.Y. 2016) (citing 9 U.S.C. § 12; *see also* CPLR § 7511(a), ("[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him").

### II.    The September 2nd Award Prevents Plaintiffs from Vindicating Their Statutory Rights

In finding that Plaintiffs entered into a valid and enforceable waiver, abridging the limitations period for wage claims from six (6) years to ***six (6) months***, Arbitrator Brown relied primarily on two decisions from the District Court of the Southern District of New York: *Keller v. About, Inc.* 2021 U.S. Dist. LEXIS 86235 (S.D.N.Y. 2021) and *Cayetano v. Fed. Express Corp.*, 19-cv-10619-AT at Dckt. No. 21 (S.D.N.Y. 2022).

With the exception of *Keller*, there are no case (state or federal) which dealt directly with the shortening of the six-year statute of limitations prescribed by Article 6 (payment of wages) of NYLL § 198(3).   However, there is a plethora of New York cases which state the general proposition that parties may agree to shorten a statute of limitations prescribed by law. These cases all involve the statute of limitations prescribed under Article 2 of the CPLR (*e.g.,* breach of contract, fraud etc.); not statutes of limitations provided by substantive laws such as Article 6 of the NYLL.

Article 2 of the CPLR expressly permits statutes of limitation which are specified under that Article to be shortened by agreement. CPLR § 201.  Section 201 states as follows:

> "An action, including one brought in the name or for the benefit of the state, must be commenced *within the time specified in this article* unless a different time is prescribed by law *or a shorter time is prescribed by written agreement*.  No court shall extend the time limited by law for the commencement of an action."

CPLR § 201 (emphasis added). Although the phrase "*or a shorter time is prescribed by written agreement*" appears to modifying the and the penultimate phrase "*the time specified in this article*",[11] courts have morphed the provision of CPLR § 201 into the general precept that all statutes of limitations may be shortened by agreement; however, there are cases other than *Keller* that applied this precept to statutes of limitations prescribed by substantive laws as opposed to those prescribe under Article 2 of the CPLR.

## A.  The September 2nd Award Misapplied the Law

The Court in *Keller* misapplied the law. In *Keller*, the plaintiff brought various claims in the Southern District Court of New York against his employer About, Inc. premised upon

---

[11] In accord with this syntax, the Arbitrator quoted CPLR § 201 as stating, "an action…must be commenced within the time specified in this article unless…a different time is prescribed by written agreement." [Mizrahi Decl. at ¶ 7] [Ex. E at p.3].

violations of New York state and federal civil rights and human rights laws, and the NYS Pay Equity Law (NYLL § 194, *et seq*.).   The employer moved to compel arbitration pursuant to an arbitration agreement made between the parties.   The plaintiff, Keller, argued that the arbitration agreement was unconscionable because, *inter alia*, the New York statutes upon which his claims are premised do not permit contractually shortening the applicable statute of limitations. The District Court disagreed, stating "[i]ndeed, 'New York courts have held that a six month period to bring an *employment* claim is inherently reasonable." *Keller*, 2021 U.S. Dist. LEXIS 86235 at * 6 (*citing Ortegas v. GAS Secure Sold. (USA) Inc.*, 65 N.Y.S.3d 693 (1st Dept. 2017)) (emphasis in italics).

The *Keller* Court's reliance on *Ortegas* is misplaced.   Although *Ortegas* did involve an employment claim, that claim was based on employment discrimination, not wage claims under the NYLL.   Employment discrimination claims are liabilities created by Article 16 of the Human Rights Law.   *See* New York State Executive Law § 290, *et seq*.  (the "NYSHRL").   Because the NYSHRL does not specify a time frame within which to commence an employment discrimination action, the statute of limitations for such a claim is governed by CPLR § 214(2), inasmuch as the action was one to recover upon liability created by statute.[12]   CPLR § 214(2); *Koerner v. State of New York*, 62 N.Y.2d 442, 446 (1984).   Because the statute of limitations for employment discrimination in *Ortegas* fell under Article 2 of the CPLR, that Article permitted the shortening of the statute of limitation by agreement.   CPLR § 201.

Likewise, the arbitrator's reliance on *Cayetano v. Fed. Express Corp., supra,* is misplaced. *Cayetano* involved employment disability claims under the NYSHRL, which, as noted above, does not specify a statute of limitations and therefore the SOL is governed by CPLR § 214(2).

---

[12] CPLR 214(2) states "[t]he following action must be commenced within three years…2. an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in section 213 and 215."  CPLR 214(2)

There is no equivalent provision in Article 6 of the New York State Labor Law which permits its six-year statute of limitation to be shortened by agreement.[13] NYLL § 198(3).   To the contrary, as explained in subparagraph "iii" below, it appears that an agreement between an employer and employee to shorten this six-year statute of limitation as a condition of employment (such as the Plaintiffs' arbitration agreement) may be prohibited by the anti-kickback provision of Article 6 of the NYLL.  NYLL§ 198-b.

### B.   Intent to Shorten the Statute of Limitations was not Clear and Unequivocal

Generally, although parties to a contract may agree to shorten a statute of limitations, "to be enforceable" the intention to shorten "must be clear and unambiguous."  *Batales v. Friedman*, 144 A.D.3d 849, 850 (2d Dept. 2016); *Smile Train, Inc. v. Ferris Consulting Corp.*, 177 A.D.3d 629 (1st Dept. 2014); *Fitzpatrick Weller, Inc. v. Miller*, 309 A.D.2d 1273, 1273 (4th Dept. 2003) ("the intent to shorten the limitation period must be set forth in a clear and unambiguous manner.") "Contractual stipulations which limit a right to sue to a period shorter than that granted by statute, are not looked upon with favor because they are in derogation of the statutory limitation.  Hence they should be construed with strictness against the party invoking them."  *Ape Grp. SPA v. Republic of Argentina*, 2022 WL 463309, at *2 (S.D.N.Y. 2022) (citing *Hauer Constr. Co. City of New York*, 85 N.Y.S.2d 42, 44 (N.Y. App Term 1948) *aff'd*, 93 N.Y.S.2d 915 (1st Dept. 1949)); accord *Lavin v. Briefly Stated, Inc.,* 2011 WL 1334845, at *6 (S.D.N.Y. 2011) (noting that such provisions should be "viewed with caution"). The six-month filing requirement contained in the subject arbitration agreement does not clearly and unambiguously show an intent to shorten the application statute of limitations. The provision states:

---

[13] *Cf.* Section 2-725 of the Uniform Commercial Code, a substantive law which expressly allows agreements to shorten the statute of limitation: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it."  UCC § 2-75(1).

> "Employee agrees to file for Arbitration with respect to any controversy, claim, or dispute within (6) months from the date of the alleged violation, unless otherwise prohibited by law and/or statute."

[*See* Mizrahi Decl. at ¶ 6] [Ex. D at *18]. Although the employees agreed to file an arbitration claim within six months, the provision does not expressly waive the statute of limitations, nor does it unambiguously state that failure to timely file for arbitration will forever bar the claim.[14] Moreover, the reference to other prohibitive laws or statutes is not a clear intent to shorten the period of limitations. *Batales*, 144 A.D.3d at 850  (agreement to shorten a statute of limitations "must be clear and unambiguous"); *Smile Train, Inc..*, 177 A.D.3d 629;  *Zagelbaum v. Unitedhealthcare of N.Y., Inc.*, 2020 N.Y. Slip Op. 30527 (N.Y. Sup. Ct 2020) ("a provision is ambiguous if key terms are not defined"); *Spataro v. Hirschhorn*, 40 A.D.3d 1070, 1071 (2d Dept. 2007) (contractual period of limitations is unenforceable because the period is unreasonably short and the provision is not clear and unambiguous); *Certified Fence Corp. v. Felix Industries*, 260 A.D.2d 338 (2d Dept. 1999) ("where two provisions of a contract conflict, the contract must be resolved against the party who drew the contract.").

In contrast, the agreement in *Keller* had expressly shortened the statute of limitations.  In *Keller*, the agreement states in pertinent part

> …and you further agree that any claim, controversy or dispute must be submitted or raised within six (6) months of the time when the event or occurrence giving rise to the dispute arose or will be waived by you."

[Mizrahi Decl. at ¶ 8] [Ex. F].

In the *Keller* agreement, there is an expressed waiver of the claim if not filed within the mandated time prescribed by the arbitration agreement.  Also, the issue of whether the provision is "clear and unambiguous" was not raised in the District Court or the Appellate court.

---

[14] Plaintiffs merely agreed to file the arbitration within six months.  There is no mandated language such as "must" or "shall" file within six months.

In sum, the provision in the Same Day arbitration agreement may be unenforceable because the intent to shorten the limitation period was not set forth in a clear and unambiguous manner and therefore should be construed strictly against Same Day. *Batales v. Friedman*, 144 A.D.3d 849, 850 (2d Dept. 2016); *Smile Train, Inc. v. Ferris Consulting Corp.*, 177 A.D.3d 629 (1st Dept. 2014); *Fitzpatrick Weller, Inc. v. Miller*, 309 A.D.2d 1273, 1273 (4th Dept. 2003).

**C.  The Arbitration Agreement Violates the Anti-Kickback Statute**

The provision of the arbitration agreement which shortens the statute of limitations may be unenforceable as against public policy and/or in violation of statute. "[P]arties may agree to waive statutory rights unless a question of public policy is involved.  A contractual provision may be deemed unenforceable where the public policy in favor of freedom to contract is overridden by another weighty and countervailing public policy." *Mercado v. Schwartz*, 2022 N.Y. Slip Op. 4962 at *4 (2d Dept. 2022) (internal quotation marks and citations omitted).  Also, Agreements that involve illegal activity are void. *159 MP Corp. v. Redbridge Bedford, LLC.*, 33 N.Y.3d 353, 362 (2019).

The provision of the subject arbitration agreement which shortens the statute of limitation is arguably an impermissible *quid pro quo* as a condition of employment in violation of the anti-kickback provision of Article 6 of the NYLL.  As a condition for employment, the arbitration agreement requires the Plaintiffs to give up or limit their statutory right and protection to recover **full** wages, overtime wages and liquidated damages which have accrued during the six years prior to the commencement of a wage claim. NYLL § 198(3).  The conditional relinquishment of such right and protection contravenes the "[t]he Labor Law's overarching goal …to protect employees from wage law violations" and the labor law's "strong legislative policy aimed at redressing the **power imbalance** between employer and employee'" *Chu Chung v New Silver Palace Rest., Inc.*,

272 F.Supp.2d 314, 317 (S.D.N.Y. 2003) (emphasis added); *Konkur v. Ucad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 41 (2022).

In a dissent written by Justice J. Rivera of the New York Court of Appeals, the Hon. Judge Rivera summarizes the historical and strong legislative policy of Article 6 of the labor law in protecting employees in recovering their full wages:

> "Article 6 of the Labor Law, entitled 'Payment of Wages,' sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages. Indeed, the strengthening of employees' rights to timely and fair payment of their wages was the 'over-all objective' of the legislature in enacting article 6 which sought to 'provide increased wage protection to employees. With the enactment of the Labor Law, the legislature expanded the rights and protections of employees against wage theft and *coercion* and reaffirmed the prohibition on kickbacks in section 198-b (2). The purpose and language of the Labor Law and article 6 establish the legislature's unwavering commitment to the broadest enforcement of an employee's rights to fairly earned wages under the law by providing for a private right of action, the remedies allowed under section 198, and continued criminalization of kickbacks. Section 198 (3) provides that [a]ll employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner.

*Konkur*, 38 N.Y.3d at 41 (internal quotation marks and citations omitted).

In pertinent part, Section 198-b states

§ 198-b. "Kick-back" of wages prohibited. 1. As used in this section, the term "person" shall include any firm, partnership, association, corporation or group of persons.

2. Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, or shall be entitled to be paid or provided prevailing wages or supplements pursuant to article eight or nine of this chapter, *it shall be unlawful for any person*, either for that person or any other person, *to request, demand, or receive*, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, *or other thing of value*, *upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment*. Further, any person who directly or indirectly aids, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section.

NYLL § 198-b(1)(2) (emphasis in italic).   A violation of section 198-b is a misdemeanor. NYLL§ 198-b(5).

Section 198(3) gives employees an absolute right to recover wages due and owed for the past six years.  In part, section 198(3) states:

> 3.  Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years…All employees shall have  the  right  to  recover  full wages, benefits   and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee  or  by  the commissioner.  There is no exception to liability under this section for  the  unauthorized  failure  to  pay  wages,  benefits  or  wage supplements.

NYLL § 198(3). Certainly, an employee's right to recover his/her full wages is a "thing of value" contemplated by section 198-b (2), yet the arbitration agreement abridges that right by requiring the employee to limit or minimize his right to full wages in exchange for retaining employment in violation of the kickback statute.

As a condition of employment, the subject arbitration agreement required the Plaintiffs to file their claims within six months of the violation.[15] This effectively limited the Plaintiffs to recover overtime pay that accrued within the previous six months as opposed to the statutory right to recovery wages that accrued during the previous six years.  Hence, the agreement barred the Plaintiffs from recovering overtime wages, if any, which accrued more than six months prior to the signing of the agreement.

Based upon the dates of the arbitration agreements and the period of employment for each Plaintiff, it appears that only Plaintiffs Coombs and Mayo may have overtime wages that accrued

---

[15] The Arbitration Agreement states in part "[i]n consideration of my ('Employee') employment and/or continuing employment with Same Day Delivery, Inc. ….Employee agrees to file for Arbitration with respect to any controversy, claim, or dispute within (6) months from the date of the alleged violation, unless otherwise prohibited by law and/or statute." [*See* Mizrahi Decl. at ¶ 6] [Ex. D at *18].

more than six months prior to the date of agreement. Plaintiffs' statutory right to recover these accrued wages is a thing of value.  By requiring the shortening of the recovery time to six months in consideration of employment, Same Day unlawfully requested, demanded or received "*other thing of value*, *upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment*." NYLL § 198-b(2).

Lastly, it is well established that contractual periods of limitation "must not be so short as to be unreasonable in light of the provisions of the contract and the circumstances of its performance and enforcement."  *Matter of Brown & Guenther (North Queensview Homes)*, 18 A.D.2d 327 (1st Dept. 1963).  The period of limitation in the subject arbitration agreement was unreasonably short (if not completely barred) as to Coombs' and Mayo's recovery of overtime wages that accrued prior to the date of the agreement.

### III.    Arbitrator Brown Selectively Ignored Critical Facts, in Manifest Disregard of the Law

Plaintiffs' primary argument in opposition to Defendants' Motion to Dismiss was that material factual disputes exist as to whether Plaintiffs ever agreed to the offending statute of limitations provision. [Mizrahi Decl. at ¶ 6] [Ex. D at pp. 2-3].

Plaintiffs noted that there was no indication that Plaintiffs Coombs, Sierra, Weaver-Moore, Pertha, Reed and Omoregie ever signed an arbitration agreement, *i.e.,* they never agreed to shorten the statute of limitations period. [*Id.* at p. 3 n.6]. Plaintiffs also noted that Defendants failed to provide *any* arbitration agreement, or other document, pertaining to Plaintiff Collins. [*Id.* at p. 3 n.4]. This is a critical fact because Collins first appeared in the Arbitration on June 15, 2022, when Arbitrator Brown permitted the filing of Plaintiffs' ASOC. [*See* Mizrahi Decl. at ¶¶ 4, 5] [Exs. B, C]. In response to this threshold issue, Arbitrator Brown concluded that regardless of whether

Plaintiffs ever signed an agreement with Defendants, the second preamble whereas provision[16] in the Stipulation and Order, entered on April 13, 2022 [Dckt. No. 21], binds each and every Plaintiff to the terms of the arbitration agreements, including the offending statute of limitations provision. [*See* Mizrahi Decl. at ¶ 7] [Ex. E at p. 9]. This argument is both legally and factually flawed.

**A.  The April 13, 2022 Stipulation did not Bind Plaintiffs to the Terms of the Arbitration Agreement**

Arbitrator Brown's reliance[17] on *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (2002) and *Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 2005 WL 3750749, at *7 (S.D.N.Y. 2005) for the proposition that the April 13, 2022 Stipulation and Order [Dckt. No. 21] effectively bound Plaintiffs' to the offending statute of limitations provision is misplaced. Nothing in *McCoy* nor *Patterson* suggests that an agreement to proceed to arbitration would bind a party to the terms of a separate document. Here, the parties' intention in filing the proposed stipulation on April 12, 2022 [Dckt. No. 20] was simply to change the venue of Plaintiffs' wage-and-hour claims from federal court to arbitration. The substantive provisions of the so-ordered Stipulation are found in paragraphs one (1) through three (3), therein. These three (3) paragraphs captured the understanding the parties' intention as follows:

1.  The Parties hereby stipulate and agree to submit the entire Action to a final and binding arbitration before the ADR Systems of America, L.L.C. ("ADR");

2.  For purposes of tolling and statutes of limitation, the Parties hereby stipulate and agree that all claims are to be considered filed against Defendants on January 20, 2022; and

3.  Upon the filing of this Stipulation and Order, Plaintiffs' claims against the Defendant in this Action shall be dismissed without prejudice.

[Dckt. No. 21]. Arbitrator Brown's selective interpretation of the Stipulation and Order cannot be reconciled by law, or the express language of the April 12, 2022 Stipulation.

---

[16] [*See* Dckt. No. 21] ("WHEREAS, Plaintiffs have executed certain arbitration agreements…")
[17] [Mizrahi Decl. at ¶ 7] [Ex. E at p. 9].

**B.** **At Minimum, Plaintiff Collins is Not Bound by this Decision, Because he was not a Signatory to the April 13, 2022 Stipulation**

Assuming, *arguendo,* that the so-ordered April 13, 2022 Stipulation effectively bound Plaintiffs to the terms of the offending statute of limitation provision (which it did not), this outcome would not affect Plaintiff Collins, who first joined the action on June 15, 2022, *i.e.,* two (2) months after the April 13, 2022 Stipulation and Order was filed. As noted in Plaintiffs' opposition to the Motion to Dismiss, Defendants failed to provide *any* arbitration agreement, or other document, pertaining to Plaintiff Collins. [Mizrahi Decl. at ¶ 6] [Ex. D at p. 3 n.4]. Arbitrator Brown ignored this critical fact in issuing the September 2nd Award.

**C.** **Even if Plaintiffs *Had* Entered into Arbitration Agreements via Stipulation, Their Claims Were Filed Within the Offending Statute of Limitations Period**

Assuming, *arguendo,* that the so-ordered April 13, 2022 Stipulation effectively bound Plaintiffs to the terms of the offending statute of limitation provision (which it did not), then by Arbitrator Brown's logic, Plaintiffs would have entered into the arbitration agreements as of April 13, 2022. According to the same April 13th Stipulation, "[f]or purposes of tolling and statutes of limitation, the [p]arties…stipulate[d] and agree[d] that all claims are to be considered filed against Defendants on January 20, 2022." [Dckt. No. 21]. Thus, Plaintiffs' claims were technically filed exactly two (2) months and twenty-four (24) days ***before*** they could have been said to have entered into the arbitration agreements, via stipulation. After giving the September 2nd Award the benefit of the doubt, Plaintiffs' NYLL claims would have been filed within the offending six (6) month window.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motion to Vacate should be granted, together with such other and further relief as the Court deems just and proper.

21

Dated: New York, New York
       November 30, 2022

                LEVIN EPSTEIN & ASSOCIATES, P.C.

                */s Jason Mizrahi*
                Jason Mizrahi, Esq.
                Joshua Levin-Epstein, Esq.
                60 East 42nd Street, Suite 4700
                New York, New York 10165
                Tel No.: (212) 792-0048
                *Attorneys for Plaintiffs*