USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD COMBS, JANIQUA MAYO, MARTIN SIERRA, DRESHON WEAVER-MOORE, AND WILLIAM PERTHA, *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action*

PLAINTIFFS,

-against-

SAME DAY DELIVERY INC., SCOTT WEINSTEIN, AND BENE EWERTON,

DEFENDANTS.

1:22-cv-00520-MKV

OPINION AND ORDER
DENYING MOTION TO VACATE
ARBITRATION AWARD

MARY KAY VYSKOCIL, United States District Judge:

Pending before this Court is Plaintiffs' motion to vacate, or in the alternative to modify, an arbitration award issued against them and in favor of Defendants. [ECF No. 22]. For the reasons explained below, the motion to vacate or modify the award is denied.

## BACKGROUND[1]

### I. UNDERLYING FACTS

Plaintiffs are former delivery drivers who worked for Defendant Same Day Delivery, a courier service, including during the height of the COVID-19 pandemic. Compl. ¶¶ 12–33. In essence, Plaintiffs allege that they and other similarly situated workers performed services for Defendants at various times beginning in or around April 2019 through November 2020. Compl.

---

[1] Because Plaintiffs did not file a petition to vacate the arbitration award, the facts are drawn from Plaintiffs' Complaint originally filed in this Court but subsequently dismissed in favor of arbitration ("Compl.") [ECF No. 1], the Declarations filed in connection with the pending motion ("Mizrahi Decl." and "Brown Decl.") [ECF Nos. 24 and 30, respectively], and the exhibits attached thereto. Relevant exhibits include an executed arbitration agreement found in Brown Decl. Ex. 1 ("the Arbitration Agreement") and the Arbitrator's motion to dismiss opinion found in Mizrahi Decl. Ex. E ("Dismissal Award").

¶¶ 12–31. Plaintiffs allege that during that time, they regularly worked more than forty hours a week but never received an overtime premium. Compl. ¶ 87. Plaintiffs further allege that Defendants maintain a "policy and practice" of unlawfully appropriating Plaintiffs' tipped wages. Compl. ¶¶ 96–97.

## II.      THE SDNY LITIGATION

Plaintiffs Edward Combs ("Combs"), Janiqua Mayo ("Mayo"), Martin Sierra ("Sierra"), Dreshon Weaver-Moore ("Weaver-Moore"), and William Pertha ("Pertha," collectively, "the Named Plaintiffs") initially filed a complaint in this Court alleging one claim for wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and five related claims under the New York State Labor Law ("NYLL"). Compl. ¶¶ 102–30. The Named Plaintiffs commenced this case as a collective action ("the SDNY Action"), purportedly on behalf of themselves and others similarly situated. Compl. ¶¶ 98–101. Thereafter, Wayne Reed ("Reed") and Erhuayi Omoregie ("Omoregie," collectively, "the Opt-In Plaintiffs") filed consent to sue forms joining the SDNY Action as opt-in Plaintiffs. [ECF Nos. 12, 15].[2] Less than a month after filing the Complaint, and after the Opt-In Plaintiffs had joined the case, counsel for Plaintiffs and Defendants submitted a joint letter informing the Court that the parties had agreed "to resolve the instant wage-and-hour action in arbitration," and requesting a stay of the SDNY Action. [ECF No. 17].

In response to the joint letter, the Court directed the parties to file a further joint letter addressing the proper disposition of the action pending the outcome of the arbitration. [ECF No. 19]. The parties submitted a proposed stipulation and order, agreeing to refer the dispute to a final and binding arbitration before ADR Systems of America ("ADR Systems") and to dismiss this

---

[2] The Court notes that Plaintiffs, without leave of the Court, amended the caption in their motion to vacate to include Reed and Omoregie as named plaintiffs.

case. [ECF No. 20]. The Court so ordered the parties' stipulation ("the April Stipulation"), dismissing the SDNY Action without prejudice. [ECF No. 21]. Notably, the April Stipulation begins "WHEREAS Plaintiffs have executed certain arbitration agreements . . . ." [ECF No. 21].

### III. ARBITRATION

After informing the Court of the agreement to arbitrate, Named Plaintiffs and Opt-In Plaintiffs sent a demand for arbitration to ADR Systems. Brown Decl. Ex. 1. The demand enclosed (1) a Statement of Claims, which alleged the same six claims contained in the SDNY Complaint—*i.e.*, one FLSA claim and five NYLL claims; and (2) a copy of an arbitration agreement executed by Opt-In Plaintiff Omoregie ("the Arbitration Agreement"), which Plaintiffs expressly designated as "[a] copy of the operative arbitration agreement." Brown Decl. Ex. 1. Relatedly, the Statement of Claims noted that ADR Systems "has jurisdiction over the dispute based on paragraph 2 of *the parties' arbitration agreement*," and then directly quoted the Arbitration Agreement. Brown Decl. Ex. 1 (emphasis added).[3] Thereafter, the parties mutually agreed to select James A. Brown, Esq. ("the Arbitrator") as arbitrator. Brown Decl. Ex. 3.

After the arbitration commenced, Defendants filed a pre-motion letter, requesting leave to file a motion to dismiss Plaintiffs' NYLL claims based on a limitations provision in the Arbitration Agreement ("the Limitations Provision"). The relevant provision provides that an "[e]mployee agrees to file for Arbitration with respect to any controversy, claim, or dispute within six (6) months from the date of the alleged violation, unless otherwise prohibited by law and/or statute." *See* Arbitration Agreement.[4]

---

[3] The Amended Statement of Claims filed on May 23, 2022 contains the same allegation. Mizrahi Decl. Ex. C ¶ 9 ("Am. St. of Claims").

[4] The Court notes that the parties quibble about which employment contracts were signed by which individual Plaintiffs. For example, both sides refer at various times to numerous purported arbitration agreements that apparently contain statutes of limitation provisions. *See e.g.*, Pl. Motion to Vacate at 11 ("Defendants . . . seek[] to enforce eight (8) purported arbitration agreements"); Def. Opp. at 5 ("Defendants argued that by continuing to work after entering

Plaintiffs subsequently filed an Amended Statement of Claims, adding Djuan Collins ("Collins") as a party in arbitration. *See* Am. St. of Claims. The Amended Statement of Claims alleged the original six claims—one FLSA claim and five NYLL claims—but also added a second FLSA claim ("the seventh claim") for "Unlawful Wage Deductions." Am. St. of Claims ¶¶ 31–33, 156–57. In addition, Plaintiffs filed a letter opposing Defendants' request to file a motion to dismiss. *See* Mizrahi Decl. Ex. B. The Arbitrator granted Defendants' request to move to dismiss Plaintiffs' NYLL claims "based on the arbitration clause's six-month limitations period," as well as any basis for dismissing Plaintiffs' newly added Seventh Claim. Mizrahi Decl. Ex. B.

After briefing, the Arbitrator issued an opinion and order, granting Defendants' motion to dismiss the five NYLL claims on statute of limitation grounds. Mizrahi Decl. Ex. E ("the Dismissal Award").[5] The Arbitrator began his opinion by expressly noting that, in their opposition to Defendants' motion to dismiss, Plaintiffs "assert[ed] for the first time that the Arbitration Agreements were not signed by them." *See* Dismissal Award at 8. He then found, as a threshold matter, that no material issue of fact existed concerning Plaintiffs' execution of the Arbitration Agreement. The Arbitrator cited both the April Stipulation, which expressly acknowledges the "execut[ion] [of] certain arbitration agreements" and "Plaintiffs' conduct preceding the [] motion," including "the filing of the Demand for Arbitration [and] participating in the pre-hearing [arbitration] conferences." Dismissal Award at 8–9. Next, the Arbitrator ruled that the Limitations Clause was not unconscionable, citing "legal authority that a contractual six-month time limitation for bringing [NYLL] claims is not substantively unconscionable and is thus enforceable."

---

into the arbitration agreements . . . ."). The Court solely focuses on the aforementioned Arbitration Agreement because Plaintiffs designated it as *the* "*operative* arbitration agreement." Brown Decl. Ex. 1.

[5] The Arbitrator also dismissed the Seventh Claim (the second FLSA claim added in the arbitration's First Amended Statement of Claims) for failure to state an "action cognizable at law." Dismissal Award at 12. That FLSA claim was not dismissed on statute of limitation grounds, and therefore, is not at issue on the pending motion. The Defendants did not move to dismiss the *original* FLSA claim, which is now the only remaining claim in the arbitration.

Dismissal Award at 10.  Finally, the Arbitrator rejected Plaintiffs' argument that the Limitations Clause violated public policy because "the shortening of the [NYLL's] statute of limitations to six months has been approved in court."  Dismissal Award at 10.

IV.     **PETITION TO VACATE**

After the Arbitrator granted Defendants' motion to dismiss six of Plaintiffs' seven claims, Plaintiffs filed this motion to vacate, or in the alternative to modify, the arbitral award under Section 10 of the Federal Arbitration Act ("FAA").  [ECF No. 22] ("Pl. Motion to Vacate").  Defendants opposed the motion to vacate [ECF No. 29] ("Def. Opp."), and Plaintiffs filed a reply memorandum.  [ECF No. 31] ("Pl. Reply").

## LEGAL STANDARD

At the outset, the Court notes that the role of a district court in reviewing an arbitration award is "narrowly limited" and "arbitration panel determinations are generally accorded *great deference* under the [FAA]."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (emphasis added).  In other words, the FAA creates a "strong presumption in favor of enforcing arbitration awards."  *EB Safe, LLC v. Hurley*, 832 F. App'x 705, 707 (2d Cir. 2020).  As a result, a moving party must meet the "high burden of proof necessary to vacate an arbitration award.  *Kolel*, 729 F.3d at 102; *see also Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017).

The Second Circuit has recognized that "only a very narrow set of circumstances delineated by statute and case law permit vacatur."  *Id.* (quoting *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)) (internal quotations omitted).  Specifically, Section 10 of the FAA provides four statutory grounds upon which a federal court may vacate an arbitral award, including, most relevant here (based on Plaintiffs' arguments) "where the arbitrators exceed their powers."  9 U.S.C. § 10(a)(4).

In addition to the express statutory grounds found in Section 10(a) of the FAA, the Second Circuit has recognized a basis for vacatur of an arbitration award where an arbitrator's award is in "manifest disregard" of the applicable law. *See e.g.*, *Jefferies LLC v. Gegenheimer*, 849 F. App'x 16, 17 (2d Cir. 2021). It is well-established that the "manifest disregard" doctrine is one of "last resort" and is limited "only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Id.* at 17 (quoting *Duferco*, 333 F.3d at 389). In fact, "[g]iven the deference afforded arbitration decisions," a party seeking to vacate an award based on manifest disregard must show "more than a mistake of law or a clear error in fact finding." *EB Safe*, 832 F. App'x at 707.

## DISCUSSION

### I. THE COURT HAS AUTHORITY TO REVIEW THE AWARD

**A. The Court has Jurisdiction Over the Motion to Vacate**

As an initial matter, a federal court has a duty to consider *sua sponte* whether it has subject-matter jurisdiction whenever a doubt arises as to the exercise of federal jurisdiction. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). This case was originally terminated in April 2022 pursuant to stipulation by the parties. [ECF Nos. 20, 21]. In their proposed stipulation, the parties stated that "Plaintiffs' claims against the Defendant in this Action shall be dismissed without prejudice." [ECF No. 20]. The stipulation did not provide that the Court retained jurisdiction over this case. The Court so ordered the proposed stipulation, upon consent of the parties, and the case was subsequently terminated. [ECF No. 21, 22]. Seven months after the case was closed, Plaintiffs filed the pending motion under the same case number as the original action. There is no operative Complaint, petition, or other pleading. Therefore, the Court first addresses whether it has subject matter jurisdiction over this action, despite the earlier termination of the case or whether, as some courts have concluded, Plaintiffs properly should have

commenced a new action seeking to vacate the arbitration award. *See e.g.*, *Thompson v. Kellogg Brown & Root (KBR) Halliburton*, No. 3:07-CV-793, 2010 WL 4023743, at *1 (E.D. Va. Oct. 13, 2010); *Switzer v. Credit Acceptance Corp.*, 2009 WL 2900254 (W.D. Va. September 2, 2009).

There is no Second Circuit case directly addressing this question. In *Smiga v. Dean Witter Reynolds, Inc.*, the Second Circuit held that "a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm the arbitration award." 766 F.2d 698, 705 (2d Cir. 1985). But *Smiga* does not directly address the jurisdictional issue in the precise context of this case. In *Smiga*, the plaintiffs argued that the district court lacked jurisdiction to *confirm* the arbitration award on the ground that the arbitration panel itself allegedly lacked jurisdiction. *Id*. at 704. Here, of course, the pending motion is for vacatur, and neither party has raised any objections to either the arbitrator's jurisdiction or this Court's jurisdiction in the matter. The Court is not aware of any legal precedent within this Circuit addressing whether a court is deprived of jurisdiction to entertain a motion to vacate an arbitration award where, as here, the motion was filed under the case number of the original complaint previously dismissed without prejudice in favor of arbitration. Nevertheless, the Court finds *Smiga's* general holding that "a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate" instructive. *Id*. at 705.

Several courts from outside this jurisdiction have directly addressed the jurisdictional issue implicated by Plaintiffs' motion to vacate, and their decisions are persuasive. For example*,* in *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000), the Sixth Circuit concluded that the district court had jurisdiction to resolve a motion to vacate an arbitration award that was filed "under the same case number as the original action," even though the original action had been dismissed based upon the parties' arbitration agreement. The Sixth Circuit rejected the defendants'

argument that the plaintiff should have "institut[ed] a new action under [Section] 10 of the FAA in order to challenge the arbitral award." *Id*. at 972–73.  Various district courts have reached the same conclusion.  *See e.g.*, *Owen-Williams v. BB & T Inv. Servs.*, Inc., 717 F. Supp. 2d 1, 13 (D.D.C. 2010); *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1101 (D. Ariz. 2005), *aff'd*, 505 F.3d 874 (9th Cir. 2007); *but see Thompson*, 2010 WL 4023743; *Switzer*, 2009 WL 2900254.

Based on the reasoning in *Smiga* and in the persuasive holding by the Sixth Circuit in *Ameritech Corp.*, the Court concludes that it has subject matter jurisdiction to entertain the motion to vacate the Dismissal Award.

### B.  The Partial Dismissal Award is "Final"

Defendants raise a further threshold question in this case concerning the Court's authority to review the Dismissal Award, arguing that the Dismissal Award is not reviewable at this time because it is not final.

Defendants invoke Second Circuit authority, clearly establishing that under the FAA a district court has the power to confirm or vacate only a "final" arbitration award.  *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980).  As a general rule, an arbitration award is final if it "resolve[s] all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."  *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998).  However, the Second Circuit has carved out an exception, explaining that "[a]n award that finally and conclusively disposes of a '*separate independent claim*' may be confirmed even if it does not dispose of all the claims that were submitted to arbitration."  *Kerr McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (quoting *Megallgesellschaft A.G. v. M/V Captain Constante*, 790 F.2d 280, 283 (2d Cir. 1986)) (emphasis added).

Plaintiffs originally brought six *distinct* claims, under two *different* statutory schemes—one FLSA claim and five NYLL claims, Compl. ¶¶ 102–30—and later added a seventh claim in their arbitration. Am. St. of Claims ¶¶ 156–62. In his Dismissal Award, the Arbitrator finally and conclusively disposed of six of the seven claims in their entirety, such that only the original FSLA claim remains. Dismissal Award at 11–12. Defendants argue that the Second Circuit states an arbitral award is not final when it "[does] not finally dispose of any of the claims submitted," *see* Def. Opp. at 11 (citing *Michaels*, 624 F.2d at 413-14). But the Arbitrator did just that in this case—he dismissed six separate *claims in their entirety*.

Defendants next argue that the arbitral award cannot be final while Plaintiffs' FSLA claim remains, because that claim "is interrelated to the dismissed NYLL claims," such that the dismissed claims are "not independent" and "separable" from the remaining claim. Def. Opp. at 12. To that end, Defendants argue that the Award is "merely a *segment* of a future conclusive award" and is, therefore, not ripe for this Court's review. Def. Opp. at 12 (internal quotations omitted). As an initial matter, the remaining claim and dismissed claims derive from different bodies of law—separate federal and state statutes. While the remaining FLSA claim will naturally rest upon some of the same facts as the now dismissed NYLL claims, this "overlap does not preclude the Court from concluding that those claims are entirely separate and independent." *See Adult Use Holdings Inc. v. FaZe Clan Inc.*, 631 F. Supp. 3d 174, 182 (S.D.N.Y. 2022).

Defendants also cite to the fact that the Arbitrator used the term "interim relief" with respect to Plaintiffs' anticipated filing of the pending motion.[6] Def. Opp. at 12. Defendants cite to *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007), in support of their argument that the

---

[6] Specifically, one month after issuing his Dismissal Award, the Arbitrator "grant[ed] Plaintiffs 30 days to file papers in the federal court seeking "interim relief" and stayed discovery in the arbitration "[t]o the extent interim relief is sought *in federal court*, and the court intervenes . . . ." Brown Decl. Ex. 6 (emphasis added).

Arbitrator's use of the phrase "interim relief" is an express statement that "the Award is not a final order." Def. Opp. at 12.  However, *Zeiler* makes clear—as Defendants themselves quote in their brief—that an interim arbitral award can be confirmed if the Arbitrator's Dismissal Award "do[es] not serve as a preparation or a basis for further decisions *by the arbitrators*."  *Zeiler*, 500 F.3d at 169 (emphasis added).  Here, the "interim relief" referenced by the Arbitrator is relief by *this Court* and not a "further decision[] by the arbitrator."  The Arbitrator's Dismissal Award with respect to the five NYLL claims and the seventh (new FLSA) claim requires no further decision from him; he simply awaits any action by *this* Court before turning to the sole surviving FLSA claim in the arbitration.  As such, the Arbitrator issued a "final," albeit partial, arbitration award that may be reviewed by this Court.

## II.  PLAINTIFFS HAVE PROVEN NO VALID BASIS FOR VACATUR

Plaintiffs argue that the Dismissal Award should be vacated on four different grounds: (1) the Award prevents Plaintiffs from vindicating their statutory rights; (2) the Award was issued in violation of Section 10(a)(4) of the FAA; (3) the Arbitrator granted the Award in a "manifest disregard" of the applicable law; and (4) the Award is contrary to public policy.

### A.  The "Effective Vindication" Doctrine

First, Plaintiffs argue that federal courts decline to enforce arbitration agreements that prevent the "effective vindication" of statutory rights.  Certainly, a federal court will "compel arbitration of a statutory claim only if it is clear that the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (internal quotations omitted).

But Plaintiffs confuse the real issue at hand.  Plaintiffs cite several cases that considered whether to enforce an arbitration agreement between parties and compel arbitration, where one party objected to arbitration.  *See e.g.*, *Id*. at 118; *Balderas v. 8 Chelsea Corp.*, No. 18-CV-11149

(VEC), 2019 WL 3429500, at *1 (S.D.N.Y. 2019).  Here, the parties jointly stipulated that their dispute—originally the subject of six causes of action in the SDNY Complaint—were arbitrable and asked the Court to dismiss this case in deference to the arbitration.  [ECF No. 17].  As such, the issue here is not whether the Court should *compel* arbitration.  The sole issue is whether this Court should vacate the Arbitrator's Dismissal Award.[7]  Accordingly, Plaintiffs' "effective vindication" doctrine argument is inappropriate as a ground for vacatur.

### B. The Arbitrator Did Not Exceed His Power

Plaintiffs rely next on Section 10(a)(4) of the FAA,[8] arguing that the Arbitrator exceeded his power when he applied Limitations Provision in the Arbitration Agreement to claims of Plaintiffs who were either "absent" or did not "consent" to the terms of the Agreement.

Section 10(a)(4) of the FAA allows courts to vacate an arbitral award "where the arbitrators exceed their powers."  9 U.S.C. § 10(a)(4).  The Second Circuit has "consistently accorded the narrowest of readings" to Section 10(a)(4).  *ReliaStar Life Ins. Co. of New York v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (internal quotation marks omitted).  Specifically, the inquiry under this provision "focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation marks omitted).

---

[7] To the extent that Plaintiffs' "effective vindication" argument can be interpreted as an argument on other grounds to vacate or modify the Dismissal Award, it similarly fails.  For instance, Plaintiffs quote *Global Tech Industries Group Inc. v. Go Fun Group Holdings*, 2022 WL 16949863, *2 (S.D.N.Y. 2022), for the proposition that "[w]hen a [party's] legal challenge is that a contract *as a whole* in unenforceable, the arbitrator [must] decide[] the validity of the contract, including derivatively the validity of its constituent provisions." (Emphasis added).  First, Plaintiffs' sole concern with Arbitration Agreement is its Limitations Clause, not the agreement "as a whole."  Moreover, Plaintiffs never sought to set aside or otherwise invalidate the Arbitration Agreement at any time prior to Defendants' motion to dismiss in the arbitration.  Dismissal Award at 8.

[8] The Court also notes that while Section 10 of the FAA provides three additional grounds for vacatur, Plaintiff exclusively invokes Section 10(a)(4) in its motion.  As such, the Court does not address Sections 10(a)(1)-(3).

Despite their earlier stipulation in this Court that their claims are subject to arbitration, Plaintiffs now argue that they never signed the Arbitration Agreement. Relying on this contention, Plaintiffs argue that, as a result, "[the] arbitrator's fundamental authority, derived from a contract between parties before him, is exceeded when [he] attempts to bind absent individuals who have not invoked or consented to the terms of an arbitration agreement." Pl. Reply at 6. In making this argument, Plaintiffs brazenly ignore various facts in the record. Not only did Plaintiffs submit a joint letter with Defendants informing this Court that they "agreed[] to resolve the instant wage-and-hour action in arbitration," but Plaintiffs' counsel also subsequently sent a demand for arbitration, enclosing as "[a] copy of the operative agreement" the very Arbitration Agreement (containing the Limitations Provision) they now contest. [ECF No. 21]; Brown Decl. Ex. 1. In other words, Plaintiffs themselves submitted to the Arbitrator the precise same Arbitration Agreement to which they now contend they are being subjected absent their "acceptance" or "mutual assent." Pl. Reply at 8.[9] The Arbitrator noted that the first time Plaintiffs ever asserted that they did not sign the Arbitration Agreement was in their opposition to Defendants' motion to

---

[9] Plaintiffs also place heavy weight on the Arbitrator's reference in the Dismissal Award to this Court's April Stipulation. Specifically, the Arbitrator explained that he did not need to reach the Arbitration Agreement's enforceability "because the [Plaintiffs] have acknowledged the existence of binding Arbitration Agreements in [the April Stipulation]." *See* Dismissal Award at 8. Plaintiffs now argue that "the parties' intention in filing the proposed stipulation . . . was simply to change the venue of Plaintiffs' wage and-hour claims from federal court to arbitration," not to bind the parties to the Arbitration Agreement itself. Pl. Motion to Vacate at 20. Plaintiffs argue "[a]ssuming, *arguendo*, that the so-ordered April 13, 2022 Stipulation effectively [did bind] Plaintiffs to the terms of the offending statute of limitation provision . . . then by Arbitrator Brown's logic, Plaintiffs would have entered into the Arbitration Agreement as of April 13, 2022," and therefore, Plaintiffs claims are timely. Pl. Motion to Vacate at 21. Plaintiffs twist not only the Arbitrator's words but also his logic. The Arbitrator never stated that the parties *entered into* the Arbitration Agreement on April 13, 2022. Instead, the Arbitrator likely referenced the binding April Stipulation to demonstrate that the Plaintiffs had previously acknowledged the existence of such Agreement. Nothing in the language of the Dismissal Award suggests that the Arbitrator intended to set April 13, 2022 as the execution date of the Arbitration Agreement rather than merely noting that on that date, Plaintiffs (and Defendants) asserted that a binding Agreement existed. This reading is bolstered by the fact that the Arbitrator also takes note of the Plaintiffs' conduct preceding Defendants' motion to dismiss, including "the filing of the Demand for Arbitration [and] participating in the pre-hearing conferences." *See* Dismissal Award at 8–9. Considering Plaintiffs' continued participation in the Arbitration and their failure to raise any issue with the Arbitration Agreement until the motion to dismiss, this Court cannot conclude that the Arbitrator's decision to enforce that Agreement is "egregious impropriety." *Jeffries LLC*, 849 F. App'x at 17.

dismiss, months after the Arbitration process had been commenced by Plaintiffs.  Dismissal Award at 8.[10]

To resolve this issue, the proper focus under Section 10(a)(4) is "whether the arbitrator[] had the power, based on the *parties' submissions* or the arbitration agreement, to reach a certain issue."  9 U.S.C. § 10(a)(4).  As noted, Plaintiffs themselves "submi[tted]" the Arbitration Agreement on which the Arbitrator relied.  That Agreement contained the Limitations Provision, which ultimately served as the basis for the Arbitrator's Dismissal Award.  Under Section 10(a)(4) of the FAA, the Arbitrator did not exceed his powers by reaching the applicability of the Limitations Provision.  It is clear that the real objection Plaintiffs raise in their motion is not that the Arbitrator exceeded his powers by *relying on* the Arbitration Agreement in rendering his Dismissal Award.  Rather, the "real objection appears to be that the arbitrator[] committed an obvious legal error in [*applying* the Arbitration Agreement]."  *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997).  As the Second Circuit has explained, "Section 10(a)(4) was not intended to apply to such a situation."  *Id.*  Therefore, the Court construes the gist of Plaintiffs' arguments—offered under the guise of Section 10(a)(4) grounds—as constituting the same "manifest disregard" objection to the Dismissal Award separately asserted by Plaintiffs.  *See* Subpoint C, *infra*.

---

[10] Separately, Plaintiffs contend that, at a minimum, Plaintiff Collins is not bound by the Arbitrator's Dismissal Award, because he was not a signatory to the April 13, 2022 Stipulation, having first joined the dispute by way of the Amended Statement of Claims filed after the Arbitration commenced.  Plaintiffs ignore that Plaintiff Collins *voluntarily joined* the arbitration proceeding *after* the Arbitration Agreement—Limitations Provision included—was already designated by his fellow Plaintiffs as the "operative arbitration agreement."  Even when a party has not *expressly* agreed to submit to an arbitration agreement, "[i]n the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."  *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776–77 (2d Cir. 1995).  Thus, while Plaintiff Collins may not have joined the action until after Plaintiffs designated the Arbitration Agreement as the operative agreement or until after the April Stipulation, Plaintiff Collins' willing and voluntary joinder and participation in the Arbitration clearly manifests an intent to be bound to the operative agreement in that Arbitration.  The Arbitrator's decision to bind Plaintiff Collins to the Arbitration Agreement, and the Limitations Provision contained in that agreement, to which he willingly submitted, is not "egregious impropriety."  *Jeffries LLC*, 849 F. App'x at 17.

13

**C. The Arbitrator Did Not Demonstrate "Manifest Disregard" of the Law**

Plaintiffs next contend that by enforcing the Arbitration Agreement to dismiss Plaintiffs' claims, the Arbitrator acted in manifest disregard of the law.

In addition to the express statutory grounds found in Section 10(a) of the FAA, the Second Circuit has recognized an implied basis for vacatur of an arbitration award where an arbitrator's award is in "manifest disregard" of the applicable law. *See e.g.*, *Jefferies LLC v. Gegenheimer*, 849 F. App'x 16, 17 (2d Cir. 2021). A reviewing Court should resort to this doctrine only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Jeffries LLC*, 849 F. App'x 17 (citing *Duferco*, 333 F.3d at 389). An arbitral award may be vacated for manifest disregard of the law "*only if* a reviewing court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal quotation marks and alterations omitted). Moreover, "[a]n arbitration award should be enforced, despite a court's disagreement with it on the merits," as long as "there is a barely colorable justification for the outcome reached." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (internal quotation marks omitted). Mere "mistake of law or a clear error in fact finding" is insufficient to vacate an arbitration award. *EB Safe*, 832 F. App'x at 707.

Plaintiffs contend that the Arbitrator manifestly disregarded the law in two respects: (1) he disregarded "the existence of a parties' 'contractually expressed consent' to be bound to an arbitration agreement;" and (2) he disregarded "the distinction between contractually shortening a statute of limitations provisions under Article 2 of the CPLR vs. Article 6 of the NYLL." Pl. Reply at 12. The Court addresses each argument in turn.

First, the Arbitrator did not disregard the existence of the parties' contractually expressed consent to be bound to the Arbitration Agreement. Rather, he acted pursuant to that consent. As previously discussed, Plaintiffs themselves submitted to the Arbitrator as the "operative arbitration agreement" the very Arbitration Agreement to which they now contend they never expressed consent. Thus, the Arbitrator did not act in "manifest disregard" of the law by interpreting the provisions of the Agreement Plaintiffs themselves invoked.

Plaintiffs next suggest that the Arbitrator's *interpretation* and subsequent application of the Limitations Provision in the Arbitration Agreement was in "manifest disregard" of the law, arguing that the Agreement's intent to shorten the statute of limitations was "not clear and unequivocal." Pl. Motion to Vacate at 14. Such an argument is an inappropriate contention on which to base a manifest disregard challenge. Indeed, there is more than a "barely colorable justification for the outcome reached" by the Arbitrator. *Banco de Seguros del Estado*, 344 F.3d 255, 260 (2d Cir. 2003).

Moreover, Plaintiffs' argument that the operative provision states that an employee "agrees to file for Arbitration . . . within six (6) months from the date of the alleged violation" rather than providing an "express[] waiver of the claim" is weak at best. *See* Pl. Motion to Vacate at 15 n.14. The Arbitration did not rule that Plaintiffs' claims were waived; he found that the claims were untimely, and thus time barred. Plaintiffs' argument would necessitate a finding that no statutes of limitation are ever applicable when silent on the consequences of failing to file a claim within the proscribed period. But, of course, that is by definition, exactly what a statute of limitations is.

Plaintiffs next argue that the Arbitrator disregarded "the distinction between contractually shortening a statute of limitations provisions under Article 2 of the CPLR vs. Article 6 of the NYLL." Pl. Reply at 12. Specifically, Plaintiffs argue that while Article 2 of the CLPR, which sets forth statutory limitations of time, expressly permits statutes of limitations to be shortened by

15

agreement, Article 6 of the NYLL contains no such provision. Plaintiffs suggest that the Arbitrator, in a manifest disregard of the law, applied the "general precept that [] statutes of limitation may be shortened" set forth in CPLR Section 201 to a *substantive* law, *i.e.*, NYLL Article 6. Pl. Motion to Vacate at 12. As Plaintiffs acknowledge (Pl. Motion to Vacate at 1), "there is a plethora of New York cases which state the general proposition that parties may agree to shorten a statute of limitations prescribed by law." *See e.g.*, *Whitney Lane Holdings, LLC v. Don Realty, LLC*, 159 A.D.3d 1163, 1165, 72 N.Y.S.3d 213, 216 (2018); *J Constr. Co., LLC v. Westchester Fire Ins. Co.*, 165 A.D.3d 1076, 1078, 87 N.Y.S.3d 585, 587 (2018); *City of Yonkers v. 58A JVD Indus., Ltd.*, 115 A.D.3d 635, 637, 981 N.Y.S.2d 736, 739 (2014).

Moreover, in Plaintiffs own words, "[w]ith the exception of *Keller*, there are no case [sic] (state or federal) which deal[] directly with the shortening of the six-year statute of limitations prescribed by Article 6 (payment of wages) of NYLL Section 198(s)." Pl. Motion to Vacate at 12. In *Keller*, the district court held that "New York courts have held that a six month [sic] period to bring an *employment* claim is inherently reasonable." *Keller*, 2021 U.S. Dist. LEXIS 86235 at * 6 (citing *Ortegas v. GAS Secure Sold. (USA) Inc.*, 65 N.Y.S.3d 693 (1st Dept. 2017)). In short, the Arbitrator's reliance on both *Keller's* analysis of NYPLL Article 6, coupled with the "plethora of New York cases" permitting arbitration agreements to shorten statutes of limitation, simply cannot be said to lack a "barely colorable justification." *Banco de Seguros del Estado*, 344 F.3d at 260.

### D. The Dismissal Award is Not Against Public Policy

Finally, Plaintiffs urge that the Award should be vacated because it violates public policy in two respects: (1) the six-month Limitations Provision in the Arbitration Agreement violates the anti-kickback provision of Article 6 of the NYLL; and (2) the conditional relinquishment of Plaintiffs' rights to recover unpaid wages would disregard the NYLL's policy aimed at redressing the power imbalance between employer and employee. Pl. Motion to Vacate at 16–19.

While the Supreme Court has recognized that an arbitral award may be vacated where it is contrary to public policy, the ground is narrowly circumscribed. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (internal quotations and citations omitted). The Supreme Court expressly "cautioned" that "a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations" in which there is "some explicit public policy that is well defined and dominant, and is to be ascertained *by reference to the laws and legal precedents* and not from general considerations of supposed public interests." *Id*.

First, Plaintiffs argue that the six-month Limitations Provision in the Arbitration Agreement is an "impermissible *quid pro quo* as a condition of employment in violation of the anti-kickback provision of Article 6 of the NYLL." Pl. Motion to Vacate at 16. In support, Plaintiffs cite to two cases—an inapposite federal case and a dissent from a New York state court opinion. The cases are wholly inapposite and lend no support to Plaintiffs' attack on the Dismissal Award. Both *Chu Chung v. New Silver Palace Restaurants, Inc.*, 272 F. Supp. 2d 314 (S.D.N.Y. 2003) and *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38, 185 N.E.3d 483 (2022), addressed only whether there was legislative intent to allow employees a private right of action against employers for illegal kickbacks. Neither case involves statutes of limitation provisions in employment agreements.

Second, Plaintiffs argue that the Dismissal Award is against public policy because the conditional relinquishment of Plaintiffs' rights to recover damages for unpaid wages for a full six-year period would contravene the NYLL's legislative policy "aimed at redressing the power imbalance between employer and employee." Pl. Motion to Vacate at 16–17 (citing *Chu Chung*, 272 F.Supp.2d 314). It is well-settled, however, that "mere inequality of bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). "The FAA

certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone*, 595 F.3d at 121; *see also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009); *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703, at *13 (S.D.N.Y. 2015). Plaintiffs' reliance on NYLL's overarching goal to protect employees from wage violations is precisely the type of "general considerations of supposed public interests" that the Supreme Court cautioned district courts against invoking to vacate an arbitration award. *United Paperworkers*, 484 U.S. at 43.

## CONCLUSION

For the reasons discuss above, the motion to vacate or modify the arbitration award is DENIED. The Clerk of Court is respectfully requested to close the Motion at ECF No. 7.

**SO ORDERED.**

Date: **September 20, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**